ROTHENBERG, J.
 

 In their first-party bad faith action against State Farm Florida Insurance Company (“State Farm”), the plaintiffs, Rene and Sylvia Puig (“the Puigs”), moved to compel State Farm to produce its entire claim file. The trial court granted the Puigs’ motion, and State Farm now seeks a writ of certiorari quashing the trial court’s order. We conclude that the trial court misapplied the Florida Supreme Court’s holding in
 
 Allstate Indemnity Co. v. Ruiz,
 
 899 So.2d 1121 (Fla.2005), in the following two ways: (1) by impermissibly compelling, over State Farm’s assertions of work product protection, the production of claim file documents prepared after resolution of the underlying litigation; and (2) by failing to give any consideration to State Farm’s assertions of attorney-client privilege. Accordingly, we grant the petition in part, and deny the petition in part.
 

 BACKGROUND AND PROCEDURAL HISTORY
 

 Hurricane Wilma damaged the Puigs’ home in October 2005. The Puigs submitted a timely claim to State Farm seeking to recover approximately $234,000. State Farm acknowledged coverage under the policy, but only paid out approximately $49,000. In December 2006, the Puigs commenced an action for declaratory judgment seeking to establish entitlement to a larger payout. The underlying litigation concluded on February 25, 2008, when the trial court confirmed an appraisal award of approximately $106,000 in favor of the Puigs.
 

 In November 2006, and again in March 2007, the Puigs filed notice that they intended to file a bad faith action against State Farm. In February 2009, the Puigs filed a supplemental complaint for statutory bad faith and defamation. The Puigs requested the production of State Farm’s
 
 *25
 
 entire claim file. State Farm objected, but did produce what it considered to be the non-privileged portions of the file, along with a privilege log.
 

 The Puigs moved to compel the production of the entire claim file “as of February-25, 2008.” After the first hearing, the trial court reserved ruling, but ordered State Farm to produce the documents identified in its privilege log for an in camera review. At the next hearing on the motion, the trial court compelled the production of all claim file documents, citing as authority the Florida Supreme Court’s opinion in
 
 Ruiz.
 
 On July 15, 2010, the trial court issued an amended order compelling State Farm’s production of the entire claim file, despite State Farm’s assertions that they were protected by the work product doctrine and by the attorney-client privilege. Notably, over State Farm’s assertions of work product protection, the trial court’s order compelled the production of documents prepared subsequent to February 25, 2008, after the underlying litigation over the Puigs’ claim had concluded. This petition followed.
 

 JURISDICTION
 

 “To receive certiorari jurisdiction over a non-final, non-appealable order, a petitioner must show two prerequisites. First, that the order caused irreparable harm which cannot be remedied on appeal following final judgment; and second, that the order departed from the essential requirements of the law.”
 
 Fuller v. Truncale,
 
 50 So.3d 25, 27 (Fla. 1st DCA 2010);
 
 see also Allstate Ins. Co. v. Boecher,
 
 733 So.2d 993, 999 (Fla.1999) (quoting
 
 Allstate Ins. Co. v. Langston,
 
 655 So.2d 91, 94-95 (Fla.1995)) (“[Cjertiorari is the appropriate remedy when a discovery order ‘departs from the essential requirements of law, and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal.’ ”).
 

 ANALYSIS
 

 1. The Correct Portion of the Order
 

 The trial court ordered State Farm to produce a number of claim file documents prepared prior to the conclusion of the underlying litigation. State Farm failed to produce a number of those documents, asserting they were protected under the work product doctrine. However, in
 
 Ruiz,
 
 899 So.2d at 1129-30, the Florida Supreme Court clearly held that all work product material in the claim and litigation files “that was created up to and including the date of resolution of the underlying disputed matter” must be produced in a first-party bad faith action. Thus, despite State Farm’s assertions of protection, the trial court correctly compelled State Farm to produce the work product materials in its claim file that were prepared on or before February 25, 2008, and we deny the petition as to that portion of the trial court’s order.
 

 2. The Trial Court’s First Departure From the Essential Requirements of Law
 

 The trial court departed from the essential requirements of law by compelling the production of State Farm’s work product materials prepared after the conclusion of the underlying litigation. Admittedly, those materials “may be subject to production upon a showing of good cause or pursuant to an order of the court following an in camera inspection.”
 
 Id.
 
 at 1130 (emphasis added). However, in this case, the Puigs’ motion to compel production was specifically limited to claim file documents prepared “as of February 25, 2008, the date the [trial court] confirmed the appraisal award.”
 

 
 *26
 
 The Puigs made no showing of good cause, special relevance, or need.
 
 See id.
 
 (holding that work product materials prepared after the conclusion of the underlying litigation may be subject to production upon good cause shown). Furthermore, the Puigs did not even request the court to compel the production of post-February 25, 2008 claim file documents.
 
 See Homestead-Miami Speedway, LLC v. City of Miami,
 
 828 So.2d 411, 413 (Fla. 3d DCA 2002) (striking portion of order providing relief that was neither pled nor requested);
 
 Fed. Nat’l Mortg. Ass’n v. Blocker,
 
 728 So.2d 306, 307 (Fla. 1st DCA 1999) (finding that an order granting relief that was not requested, noticed, or litigated constitutes a departure from the essential requirements of the law). Thus, we conclude that the trial court departed from the essential requirements of the law by compelling the production of claim file documents prepared after the conclusion of the underlying litigation.
 

 3. The Trial Court’s Second Departure From the Essential Requirements of Law
 

 The trial court also departed from the essential requirements of law when it agreed with the Puigs that the
 
 Ruiz
 
 case entirely eliminated an insurer’s ability to assert its attorney-client privilege in a first-party bad faith action. This decision amounted to a complete misunderstanding of
 
 Ruiz.
 
 As Justice Wells stated in a separate opinion: “I emphasize that the only issue being decided in this case is the discovery of work product in the claims file pertaining to the underlying insurance claim.”
 
 Ruiz,
 
 899 So.2d at 1132 (Wells, J., concurring in part and dissenting in part) (emphasis added). Also, in the years following the
 
 Ruiz
 
 decision, every other district court of appeal has held that the attorney-client privilege continues to exist and be available to insurers that are defending statutory bad faith claims,
 
 see West Bend Mut. Ins. Co. v. Higgins,
 
 9 So.3d 655, 658 (Fla. 5th DCA 2009);
 
 Progressive Express Ins. Co. v. Scoma,
 
 975 So.2d 461, 465 (Fla. 2d DCA 2007);
 
 Liberty Mut. Fire Ins. Co. v. Bennett,
 
 939 So.2d 1113, 1114 (Fla. 4th DCA 2006);
 
 XL Specialty Ins. Co. v. Aircraft Holdings, LLC,
 
 929 So.2d 578, 583 (Fla. 1st DCA 2006).
 
 [1]
 

 We agree with the First, Second, Fourth, and Fifth Districts. In
 
 Ruiz,
 
 the Florida Supreme Court held that in the bad-faith context, the normally automatic work product protection afforded to certain claim file documents will not bar their production.
 
 Ruiz,
 
 899 So.2d at 1131. However, that decision did not add a first-party bad faith exception to the statutory protection of confidential communications between attorneys and their clients.
 
 See
 
 § 90.502(4), Fla. Stat. (2006) (providing a limited list of exceptions where the privilege does not exist). As stated in
 
 Higgins:
 

 There are essential distinctions between an immunity from discovery based on the work product doctrine and the attorney-client privilege. First, they have different sources — work product immunity is governed by rule and is designed to facilitate litigation. The attorney-client privilege is the oldest confidential communication privilege known in the common law and is now codified by statute and contained in the Evidence Code, section 90.502, Florida Statutes (2007). The purpose of the attorney-client privilege is to “encourage full and frank corn-
 
 *27
 
 munication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.”
 
 Am. Tobacco v. State,
 
 697 So.2d 1249, 1252 (Fla. 4th DCA 1997) (quoting
 
 Haines v. Liggett Grp., Inc.,
 
 975 F.2d 81 (3d Cir. 1992)). It is an interest traditionally deemed worthy of maximum legal protection.
 
 Id.
 

 Higgins,
 
 9 So.3d at 657. The
 
 Higgins
 
 court and each of our sister courts across this state have concluded that the attorney-client privilege exists for a host of good reasons, and adherence to the law requires that confidential communications between an attorney and a client are not subject to compelled production.
 

 Our review of the instant case reflects that the trial court departed from the essential requirements of law by disregarding State Farm’s rightful assertions of attorney-client privilege. The trial court did so under the banner of the compelled claim file production involved in
 
 Ruiz.
 
 However, the issue in
 
 Ruiz
 
 was limited to whether an insurer’s assertion of work product protection must yield to a bad-faith plaintiffs need to determine whether the underlying claim was processed in good or bad faith.
 
 Ruiz,
 
 899 So.2d at 1124. The
 
 Ruiz
 
 holding did not alter the availability and existence of the attorney-client privilege.
 
 See id.
 
 at 1131 (“In accordance with our decision today, work product protection that may otherwise be afforded to documents prepared in anticipation of litigation of the underlying coverage dispute does not automatically operate to protect such documents from discovery in the ensuing, or accompanying, bad faith action.”) (Emphasis added). In other words, the trial court’s decision lacked any support in the law.
 
 [2]
 

 The instant petition must be granted in large part because the essential requirements of law provide that the attorney-client privilege exists and is available to an insurer that is faced with a bad faith claim. On remand, if the trial court finds that State Farm is seeking to protect confidential communications exchanged between State Farm and its personal counsel, the trial court may not order disclosure, unless the privilege was waived or disclosure is otherwise permitted by law.
 

 CONCLUSION
 

 The trial court departed from the essential requirements of law in two ways. First, where there was no good cause shown, and the Puigs did not even request the production of work product materials in State Farm’s claim file prepared after February 25, 2008, the trial court imper-missibly compelled State Farm to produce those documents. Second, the trial court departed from the law by deciding that the
 
 Ruiz
 
 decision — a work product doctrine case — eliminated the attorney-client privilege for insurers involved in bad faith litigation. Allowing those portions of the order to stand would materially harm State Farm’s interests, leaving no adequate remedy available on appeal.
 
 See Langston,
 
 655 So.2d at 94-95.
 

 
 *28
 
 Petition for writ of certiorari granted in part and denied in part, order quashed in part, and remanded.
 

 [1]
 

 . We note that just prior to our opinion being released, the Florida Supreme Court issued its opinion in
 
 Genovese v. Provident Life & Accident Insurance Co.,
 
 - So.3d - (Fla. 2011), holding that “the attorney-client privilege is applicable in the first-party bad faith context.”
 
 Id.
 
 at-.
 

 [2]
 

 . We reject the Puigs’ argument that
 
 Ruiz
 
 somehow "revived” this Court's holding in
 
 Fidelity & Casualty Insurance Co. of New York v. Taylor,
 
 525 So.2d 908 (Fla. 3d DCA 1987), as it related to the attorney-client privilege in bad faith cases. Taylor was disapproved by
 
 Kujawa v. Manhattan National Life Insurance Co.,
 
 541 So.2d 1168, 1169 (Fla. 1989). Although the Florida Supreme Court receded from
 
 Kujawa
 
 in
 
 Ruiz,
 
 899 So.2d at 1122, we again emphasize that
 
 Ruiz
 
 did not address the attorney-client privilege. Thus, the Puigs’ claim — that
 
 Ruiz
 
 “revived” that portion of Taylor finding no attorney-client privilege in bad faith cases — is without merit.