FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-2877
_____

EDWARD WALLACE,

    Appellant,

    v.

TINA KELDIE,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
Terrance R. Ketchel, Judge.

June 13, 2018

WETHERELL, J.

Appellant, the plaintiff below, appeals the order dismissing his personal injury suit against Appellee with prejudice for fraud on the court. We find no abuse of discretion in the dismissal of the suit because the record supports the trial court's finding that Appellant fraudulently concealed his history of chronic low back pain by falsely testifying about his medical history during his deposition. Accordingly, we affirm the dismissal order.

I

On two separate occasions in May 2014, Appellant was riding in a car owned by Appellee, his "fiancée,"[1] when the car was

_____

[1] Although Appellant referred to Appellee as his fiancée, he explained that they are not actually engaged and were only living

allegedly rammed by a white pickup truck. Both times, the pickup truck fled the scene after hitting Appellee's car.[2]

In June 2016, Appellant filed a complaint alleging that Appellee was negligent with respect to the second accident and that he suffered permanent injuries to his neck and low back as a result of that accident.[3] During discovery, Appellant disclosed that he injured his low back in the early 1980s, but he testified in his deposition that the injury "healed" and that he had not had any problems with his low back in the 30 years since. He also denied having been to see a doctor for low back pain since 2000.

Appellant's medical records told a different story. A record from an emergency room visit in October 2013—seven months before the accidents—states that Appellant reported that he hurt his low back by slipping off a stepladder, resulting in pain that he described as "aching and crushing" at a level of "10 out of 10" and radiating to his left leg. The record also states that Appellant reported having a "chronic" history of similar episodes and of a herniated disc. Additionally, a record from an emergency room visit in May 2014, nine days after the second accident, states that Appellant reported that his back pain started "a long time ago" but was made worse by the *first* accident.

Appellee filed a motion to dismiss based upon the discrepancies between Appellant's deposition testimony and his

---

together as "boyfriend-girlfriend" because he was still married to—but "legally separated" from—another woman.

[2] The driver of the pickup truck in the first accident was eventually identified. It is unclear from the record whether the same pickup truck and driver were also involved in the second accident.

[3] The complaint did not assert any claims related to the first accident.

medical records.[4]  The trial court held an evidentiary hearing on the motion at which Appellant admitted his history of low back pain as reflected in the medical records, but he claimed that his contrary deposition testimony was not due to an intent to deceive but rather was attributable to his "poor memory" caused by mental health issues, heavy drinking, and his medications.  The trial court granted the motion to dismiss, finding that Appellant's deposition testimony was "patently false" and that he had "fraudulently concealed . . . his prior personal injuries."

This appeal followed.

## II

## A

Before addressing the merits of the appeal, we explain our resolution of a procedural issue that arose after Appellee died during the pendency of this appeal.  Appellee's death did not render the appeal moot because it is well-established that personal injury actions survive the death of the alleged tortfeasor,[5] but as

---

[4] The motion also asserted that Appellant misrepresented his substantial criminal history in his deposition testimony, but the trial court ruled that dismissal was not warranted on that basis.

[5] *See* § 46.021, Fla. Stat. ("No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law."); *Waller v. First Sav. & Tr. Co.*, 138 So. 780, 789 (Fla. 1931) ("A majority of the court have reached the conclusion that under the laws of Florida a right of action in tort for the recovery of purely compensatory damages for personal injuries caused by a tortfeasor in his lifetime does not die with the tort-feasor, but that such right of action, which has accrued against the tort-feasor in his lifetime, survives after his death, and that an action at law based thereon may be brought or maintained by the injured party against the personal representative of the estate of the deceased tortfeasor for the recovery of compensatory damages out of the tortfeasor's estate for the personal wrong and injury done.").

discussed below, her death required us to cancel the scheduled oral argument and decide this appeal on the briefs.

In March 2018, after briefing was complete, counsel for Appellee filed a notice suggesting that Appellee had died on February 5, 2018. About a month later, Appellant filed a motion pursuant to Florida Rule of Appellate Procedure 9.360(c)(3)[6] to appoint an "attorney/guardian ad litem" for Appellee. The motion asserted that "no [probate] estate has or will be opened [for Appellee] in Florida or in any other state" and requested that "T. David Mann, Esquire,[7] be named as Attorney/Guardian Ad Litem and that he be substituted . . . as the real party in interest for [Appellee]." In support of this request, Appellant relied on *Schaeffler v. Deych* in which the Fourth District stated that "[i]f no estate has been opened, then another appropriate representative, such as a guardian ad litem, will need to be substituted." 38 So. 3d 796, 800 (Fla. 4th DCA 2010) (quoting *Vera v. Adeland*, 881 So. 2d 707, 710 (Fla. 3d DCA 2004)). The motion represented that although Appellee's counsel did not object to the appointment of Mr. Mann, she believed that Appellant had to petition to open a probate estate for Appellee at his expense.

We denied the motion in an unpublished order citing Judge Warner's concurring opinion in *Gomez v. Fradin*, 199 So. 3d 554 (Fla. 4th DCA 2016). In that case, the Fourth District dismissed an appeal of a nonfinal order denying the plaintiffs' motion to appoint an administrator ad litem for a defendant who had died and for whom no probate estate had been opened. *Id.* at 555 (citing Fla. R. App. P. 9.130) ("The order merely denying substitution is a

---

[6] The rule provides that "[i]f a party dies while a proceeding is pending and that party's rights survive, the court may order the substitution of the proper party on its own motion or that of any interested person."

[7] The motion did not provide any information about Mr. Mann's qualifications, experience, or relationship to the parties or their counsel; it simply stated that Mr. Mann agreed to serve as the attorney/guardian ad litem for Appellee and that "[t]here is no immediate action required of Mr. Mann."

4

non-final, non-appealable order."). Judge Warner's concurring opinion cogently explained why the plaintiff would not have been entitled to relief even if the appeal had been treated as a petition for writ of certiorari. *Id.* Specifically, Judge Warner explained that the trial court did not depart from the essential requirements of law in denying the plaintiffs' motion to substitute because there is no statutory or rule authority for a court to appoint an administrator ad litem to represent a deceased defendant in a pending civil lawsuit. *Id.* at 555–56. Judge Warner further explained that the language from *Schaeffler* quoted above—and relied on by Appellant in this case—was dicta and that a plaintiff's remedy when a defendant dies and no probate estate is opened is to petition for administration of the estate as an unsecured creditor. *Id.* at 556 (citing *Harrison-French v. Elmore*, 684 So. 2d 323 (Fla. 3d DCA 1996)).

Although *Gomez* involved a motion to substitute filed pursuant to Florida Rule of Civil Procedure 1.260(a), the reasoning in Judge Warner's concurring opinion applies equally to motions to substitute filed pursuant to rule 9.360(c)(3) because the rules use nearly identical language—providing for substitution of the "proper" party without providing authority for determining whom that might be—and serve the same purpose. Accordingly, in addition to denying Appellant's motion to appoint an attorney/guardian ad litem for Appellee, the order directed Appellant to "show cause . . . why this appeal should not be abated until a probate estate is opened for Appellee and the personal representative is appointed and substituted for Appellee in this appeal."

Appellant filed a response to the order to show cause in which he argued that the appeal should proceed with the current parties because briefing is complete. He also argued that requiring a probate case to be opened for Appellee would be an unnecessary burden on the court system if the dismissal order is ultimately affirmed, and he suggested that if we reversed the dismissal order, we could "remand . . . for further adjudication after a 'proper' defendant is substituted for the deceased defendant/appellee." Finally, he argued that "the logic of . . . *Colucci v. Colucci*, 309 So. 2d 67 (Fla. 2d DCA 1975) is applicable here."

5

Although Appellant's suggested procedure seems practical, it ignores the fact that upon her death, Appellee could no longer be a party to this appeal, *see Xtra Super Food Center. v. Carmona*, 516 So. 2d 300, 301 (Fla. 1st DCA 1987) ("[D]eceased persons cannot be parties to a judicial . . . proceeding."), nor could her attorney represent her interests, *see Rogers v. Concrete Sciences., Inc.*, 394 So. 2d 212, 213 (Fla. 1st DCA 1981) ("The death of a client terminates the relationship between the attorney and client and the attorney's authority to act by virtue thereof is extinguished."). Moreover, because Appellee's probate estate would be responsible for paying any resulting judgment if the dismissal order was reversed and Appellant's suit was allowed to proceed, the personal representative of the estate had a right to be represented, participate in oral argument, and file any necessary post-opinion motions as the real party in interest.[8]

Moreover, the *Colucci* case cited by Appellant is distinguishable because the appeal in that case "was completely ready for decision"[9] at the time of the party's death. 309 So. 2d at

_____

[8] We recognize that an insurance company is likely providing the defense in this case and will be responsible for paying the judgment up to the policy limit, but Appellee's estate would be responsible for paying any excess judgment and would be an indispensable party if the suit had gone forward. *See Nationwide Mut. Fire Ins. Co. v. Holmes*, 352 So. 2d 1233, 1234 (Fla. 4th DCA 1977) ("If a plaintiff is required to prove that the insured was negligent in order to recover from his insurer, the insured is an indispensable party and no action may proceed against the insurer without him, or his properly substituted party."); *Cope v. Waugh*, 627 So. 2d 136, 136 (Fla. 1st DCA 1993) (citing *Floyd v. Wallace*, 339 So. 2d 653 (Fla.1976)) ("Upon the death of an indispensable party, the action abates until the deceased party's estate, or other appropriate legal representative, has been substituted pursuant to rule 1.260(a)(1).").

[9] This phrase appears to have come from former Florida Appellate Rule 3.11(e)(5), which provided: "If any party to the appeal shall die after the cause is completely ready for decision, but before decision rendered, a survivor of the suit against the deceased party shall not be necessary." Although this language is

67. Here, by contrast, the appeal was not ready for decision when the suggestion of death was filed because oral argument had been scheduled but not yet held. *Cf. Poling v. City Bank & Tr. Co. of St. Petersburg*, 189 So. 2d 176, 184–85 (Fla. 2d DCA 1966) (denying motion to substitute personal representative for party who died *after* oral argument because, at that point, the appeal was "completely ready for decision").

Thus, we were left with two options—either abate the appeal as described in the order to show cause or cancel oral argument and decide this appeal based on the briefs. We found the latter option to be more appropriate in this case because (1) the appeal was ready for decision aside from the pending oral argument, and (2) it was Appellant who requested oral argument in the first place, so his request for the appeal to proceed with the current parties and his reliance on *Colucci*'s logic was viewed as a waiver of oral argument. Accordingly, by unpublished order, we advised the parties that "oral argument . . . is cancelled and this appeal will be submitted on the briefs."

B

Turning to the merits of the appeal, we review the dismissal order under a mixed standard of review: the factual findings on which the dismissal was based are reviewed for competent substantial evidence, *see Tramel v. Bass*, 672 So. 2d 78, 79 (Fla. 1st DCA 1996), while the legal conclusion that a fraud upon the court has occurred and the trial court's decision to dismiss the case with prejudice are reviewed for an abuse of discretion, *see Wells Fargo Bank, N.A. v. Reeves*, 92 So. 3d 249, 251 (Fla. 1st DCA 2012).

Appellant argues that reversal is warranted for essentially three reasons: (1) the dismissal order failed to include detailed factual findings; (2) the trial court's oral and written findings were insufficient to establish fraud; and (3) it was an abuse of discretion

---

not contained in the current appellate rules, the permissive tone of rule 9.630(c)(3)—"the court *may* order the substitution of the proper party"—allows the court *not* to order substitution in circumstances such as those described in former rule 3.11(e)(5).

7

to dismiss the matter with prejudice. We reject each argument in turn.

First, we reject Appellant's argument that the dismissal order did not include sufficient written factual findings because this issue was not preserved. *See Freiha v. Freiha*, 197 So. 3d 606, 608 (Fla. 1st DCA 2016) ("A motion for rehearing must be filed with the trial court to challenge a final judgment's lack of sufficient findings of fact to allow meaningful appellate review."). Even if the argument was preserved, it is without merit because the primary case on which Appellant relies in support of this argument—*Chacha v. Transportation USA, Inc.*, 78 So. 3d 727 (Fla. 4th DCA 2012)—is not binding on this Court and is readily distinguishable. In *Chacha*, the trial court did not hold an evidentiary hearing or make any relevant oral findings and issued a nonspecific written order that in no way demonstrated that the court "carefully balanced the policy favoring adjudication on the merits with the competing policy to maintain the integrity of the judicial system." *Id.* at 731. By contrast, the trial court in this case held an evidentiary hearing, made oral and written findings that clearly provided the basis for the dismissal, and made comments at the evidentiary hearing reflecting consideration of the competing policy interests. Specifically, on the latter point, the trial court stated that the applicable clear and convincing evidence standard is "very high" and that this was a "[t]ough case" and "very difficult" because dismissal is a "very harsh result." Then, after orally granting the motion to dismiss, the court stated that "[t]his is not done lightly, believe me."

Next, we reject Appellant's argument that there was insufficient evidence of fraud because the trial court's findings that Appellant provided false testimony both during his deposition and at the evidentiary hearing is supported by competent substantial evidence. During his deposition, Appellant was specifically asked whether he had prior back injuries and he responded by mentioning a 42-foot fall from a roof in the early 1980s, but he then immediately stated "but I mean, I was healed. You know, I didn't have any trouble." Appellant denied that the roof accident resulted in any broken bones or surgery and explained: "[I]t messed it up a little bit, made it sore for a while. I had healed since then. I mean, I was fine. Like I said, I'd been running heavy equipment 22 years.

8

I didn't have no problems." This sworn testimony is in stark contrast with the medical records from Appellant's 2013 and 2014 emergency room visits, which provide that Appellant had a history of *chronic* low back pain that intensified after the *first* car accident in May 2014, which is not the subject of this suit. Moreover, during the October 2013 visit, Appellant presented to the emergency room complaining of excruciating low back pain, which he failed to make any mention of in his deposition. In fact, he denied having been to see any doctor regarding back pain since 2000.

The trial court had plenty of reason to discount Appellant's testimony at the evidentiary hearing that his deposition testimony was the result of "poor memory" rather an intent to deceive. For example, Appellant has an extensive criminal history, including numerous crimes of dishonesty. Additionally, despite the fact that Appellant continued to claim to have no recollection of the excruciating pain he experienced less than seven months prior to the car accidents or the associated emergency room visit, he admitted in his testimony at the evidentiary hearing that he *had* experienced low back pain since the 1980s roof incident, in accordance with the medical records and in direct conflict with his deposition testimony that he was completely "healed" and had "no problems" after that incident. Accordingly, we have no basis to set aside the trial court's finding that Appellant fraudulently concealed his medical history. *See Ramey v. Haverty Furniture Co.*, 993 So. 2d 1014, 1019 (Fla. 2d DCA 2008) ("We recognized the trial court's assessment of the credibility of the plaintiff's testimony at the evidentiary hearing as a basis for the trial court's exercise of discretion.").

Finally, we reject Appellant's argument the trial court abused its discretion in concluding that Appellant's fraudulent concealment of his chronic low back pain warranted dismissal of his suit with prejudice. "A trial judge has the inherent authority to dismiss actions based on fraud." *Hutchinson v. Plantation Bay Apartments, LLC*, 931 So. 2d 957, 959–60 (Fla. 1st DCA 2006) (quoting *Distefano v. State Farm Mut. Auto. Ins. Co.*, 846 So. 2d 572, 574 (Fla. 1st DCA 2003)). Fraud on the court occurs when clear and convincing evidence demonstrates "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to

adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* at 960 (quoting *Cox v. Burke*, 706 So. 2d 43, 46 (Fla. 5th DCA 1998)).

Here, Appellant's false testimony concerned his injury history, which is at the very heart of this case. *See Distefano*, 846 So. 2d at 574 ("When a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction."); *Baker v. Myers Tractor Servs., Inc.*, 765 So. 2d 149, 150–51 (Fla. 1st DCA 2000) ("[T]he false testimony of Baker did not concern a matter collateral to his claim, but was directly related to a central fact necessary to establish his claim."). Appellant's attempt to conceal information so pertinent and critical to his claim cannot be considered anything less than an "unconscionable scheme calculated to interfere" with the proper adjudication of the matter. Appellant asserts that if he intended to deceive the court, he would not have reported the 1980s injury at all. However, being truthful about some facts while denying or omitting others does not constitute the "truthful disclosure of facts" on which "[t]he integrity of the civil litigation process depends." *Cox*, 706 So. 2d at 47; *see also Distefano*, 846 So. 2d at 575 (quoting *Morgan v. Campbell*, 816 So. 2d 251, 254 (Fla. 2d DCA 2002)).

The trial court's decision to dismiss this case with prejudice is supported by "the need to maintain [the] institutional integrity [of the judicial system] and the desirability of deterring future misconduct." *Ramey*, 993 So. 2d at 1020 (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)) (alteration supplied). It is immaterial that Appellant does not appear to have had (or concealed) any prior neck injury because "where a party lies about matters pertinent to his own claim, *or a portion of it*, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper." *Cox*, 706 So. 2d at 47 (citing *Savino v. Fla. Drive In Theatre Mgmt., Inc.*, 697 So. 2d 1011 (Fla. 4th DCA 1997)) (emphasis added). Accordingly, the trial court did not abuse its discretion in dismissing Appellant's suit.

## III

Based on the foregoing, we affirm the trial court's order dismissing this case with prejudice for fraud on the court.

AFFIRMED.

RAY and OSTERHAUS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Woodburn S. Wesley, Jr., of Wesley, McGrail & Wesley, Fort Walton Beach, for Appellant.

Samantha D. Costas and Linda H. Wade of Wade, Palmer & Shoemaker, P.A., Pensacola, for Appellee.